**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| CADLEROCK III, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 413-099 |
| | * | |
| COBALT PARTNERS, LLC; ALBERTO | * | |
| ALVAREZ; ADAM BEELER; RODNEY | * | |
| M. COOK, JR.; WILLIAM M. | * | |
| TUTTLE, II; and CHARLES K. WERK, | * | |
| | * | |
| Defendants. | * | |

**O R D E R**

Presently before the Court is Plaintiff's renewed motion
for summary judgment.[1]    (Doc. 137.)    The Clerk of Court gave
Defendants timely notice of the summary judgment motion and the
summary judgment rules, of the right to file affidavits or other
materials in opposition, and the consequences of default.    (Doc.
138.)    Therefore, the notice requirements of <u>Griffith v.
Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam),

---

[1] Plaintiff has also filed a renewed motion for default judgment against
Defendant Werk.   (Doc. 139.)   Default was entered against Defendant Werk on
July 15, 2015 for his failure to appear, plead or otherwise defend against
this action after having been properly served, (<u>see</u> docs. 92, 93), and
Defendant Werk has failed to move to set aside the entry of default against
him.   Plaintiff's motion for default judgment against Defendant Werk fails
for the same reasons set forth in the Court's Order denying Plaintiff's
original motion for default judgment against Defendant Werk, namely that
Plaintiff's complaint contains no allegations regarding who possesses the
originals of the renewed note and the relevant guaranty and thus Defendant
Werk has not admitted for the purposes of default judgment that Plaintiff is
the "holder" of these instruments.   (<u>See</u> Doc. 125.)   Because Plaintiff has
not limited the scope of its present renewed motion for summary judgment to
specific defendants, however, the Court will consider Plaintiff's claims
against Defendant Werk in its present summary judgment analysis.

have been satisfied. Defendants Alvarez, Beeler, Cook, and Tuttle filed response briefs, and Plaintiff filed a reply brief.[2] (Docs. 140, 141, 143, 144.) The time for filing materials in opposition has expired, and the motion is ripe for consideration. Upon consideration of the record evidence, relevant law, and the parties' respective briefs, Plaintiff's motion is **GRANTED IN PART, DENIED IN PART**.

## I. BACKGROUND

On January 3, 2008, in exchange for a loan to form a bank in Coral Gables, Florida, Defendant Cobalt Partners, LLC, ("Cobalt") executed a promissory note in favor of First National Bank of Savannah, Georgia, ("FNB") in the principal amount of

---

[2] Default was entered against Defendants Cobalt Partners, LLC ("Cobalt") and Werk on October 16, 2013 and July 17, 2015, respectively, for their failure to appear, plead or otherwise defend against this action after having been properly served. (See Docs. 42, 43, 92, 93.) Defendants Cobalt and Werk have failed to move to set aside the entry of default against them and – more importantly for the purposes of the Court's present analysis – have failed to respond to Plaintiff's prior or renewed motions for summary judgment. Plaintiff's present renewed motion for summary judgment, therefore, is deemed unopposed with respect to Defendants Cobalt and Werk. See LR 7.5, SDGa. ("Failure to respond within the applicable time period shall indicate that there is no opposition to a motion."). Accordingly, with respect to Defendants Cobalt and Werk, all material facts set forth in Plaintiff's statements of the material facts are deemed admitted for the purpose of this motion because Defendants Cobalt and Werk have not controverted them by filing their own statements of facts or any other materials in opposition. See LR 56.1, SDGa. ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by a statement served by the opposing party."); see also FED. R. CIV. P. 56(c). Nonetheless, in evaluating the contentions of the parties as to the other remaining Defendants, the Court must view the facts in the light most favorable to the non-moving parties and must draw all justifiable inferences in their favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

$1,000,000.00.[3]   (Roberts Decl., Doc. 89-1, ¶ 2; Wheaton Aff., Doc. 128-7, Ex. 1.)   According to Plaintiff, as part of this financing arrangement, Cobalt's members – Messrs. Allen Harper and Michael Kistler as well as Defendants Alvarez, Beeler, Cook, Tuttle, and Werk – each then executed an absolute, unconditional, continuing unlimited personal guaranty of the note.[4]   (Roberts Decl. ¶ 3; Wheaton Aff., Exs. 3-7; Kistler Dep., Doc. 89-8, at 21:4-25.)   On January 20, 2009, Defendant Cobalt renewed the note.[5]   (Roberts Decl. ¶ 5; Wheaton Aff., Ex. 2.)

Having failed to make full payment by the renewed note's maturity date of July 20, 2009, Defendant Cobalt defaulted thereon and the other Defendants did not fulfill their purported guaranties.   (Roberts Decl. ¶¶ 6-7.)   Nevertheless, on September 16, 2009, after forcing an advance of funds from Mr. Kistler's separate line of credit with FNB ("Kistler's LOC") and applying those funds to satisfy the amounts then-due under the renewed note, FNB treated the renewed note as paid in full.[6]   (Id. ¶¶ 8-9 & Ex. 8; see also Docs. 89-2, 111-3.)   FNB considered the renewed note paid off until May 27, 2010, when FNB reinstated

---

[3] Defendant Werk alone, in his capacity as managing member of Cobalt, executed the note.  (Werk Dep., Doc. 89-11, at 27:9-32:3; Wheaton Aff., Ex. 1.)

[4] Defendants Alvarez, Beeler, Cook, and Tuttle all deny having executed these personal guaranties.  (See Alvarez Decl., Doc. 118-1, ¶ 12; Beeler Decl., Doc. 123, at 2-3, ¶ 5; Cook Decl., Doc. 123, at 4-5, ¶ 5; Tuttle Decl., Doc. 117, at 26-30, ¶¶ 6, 12.)

[5] Defendant Werk alone, in his capacity as managing member of Cobalt, executed the renewed note. (Werk Dep. at 27:9-32:3; Wheaton Aff., Ex. 2.)

[6] As of September 16, 2009, there was due and payable under the renewed note the principal amount of $1,000,000.00, plus interest of $21,486.12 and late fees of $1,000.00.  (Roberts Decl. ¶ 8 & Ex. 8.)

the renewed note as it existed prior to FNB having advanced funds from Kistler's LOC on September 16, 2009.[7] (Roberts Decl. ¶ 9; see also Docs. 89-2, 111-3.)

Without payment for the renewed note, the Federal Deposit Insurance Corporation ("FDIC-R"), appointed as FNB's receiver on June 25, 2010, ultimately filed this action against Defendants on April 19, 2013, alleging that Defendant Cobalt and the other named Defendants were jointly and severally liable for the notes' outstanding principal, interest, and other amounts due thereon.[8] (Compl., Doc. 1; Roberts Decl. ¶ 10; see also Saville Decl., Doc. 128-6, ¶¶ 2-3.) The Clerk of this Court subsequently entered default against Defendants Cobalt and Werk for their respective failures to appear, plead or otherwise

---

[7] More specifically, Mr. Kistler filed a lawsuit against FNB in the Superior Court of Chatham County, Georgia for conversion and breach of contract based upon FNB's advancement of funds from Kistler's LOC to pay off the renewed note, namely *Kistler v. First National Bank*, Superior Court of Chatham County, Georgia, Case No. CV09-2222-MO (the "State Court Action"). (See Doc. 111-3; see also Doc. 89-2.) On March 26, 2010, Judge John E. Morse, Jr. entered an Order in the State Court Action in which he found that FNB was not entitled to exercise its set-off rights by advancing funds from Kistler's LOC to satisfy the renewed note and ordered that Kistler's LOC be reinstated without penalty. (Doc. 111-3, at 6-7.) Judge Morse further held that, based upon his ruling compelling the reinstatement of Kistler's LOC, the loan associated with the renewed note was in default and thus FNB could "pursue that loan and obtain a judgment as provided for under the terms of that transaction." (Id. at 7.) For a more detailed history of Mr. Kistler's interaction with the instant financing transaction, including the judgment obtained by the Federal Deposit Insurance Corporation as receiver for FNB against Kistler in relation to Kistler's LOC and his personal guaranty of the renewed note, see Kistler, et al. v. FDIC, Case No. 4:11-CV-024 (S.D. Ga. 2013), at Doc. 40, *as amended by* Doc. 44. See also Kistler v. FDIC, Case No. 4:11-CV-025 (S.D. Ga., consolidated with Kistler et al. v. FDIC on Mar. 28, 2012).
[8] Mr. Harper was originally named as a defendant in the instant suit, but the claims against him were dismissed without prejudice for lack of personal jurisdiction on August 26, 2013 pursuant to a stipulation between the FDIC-R and Mr. Harper. (Docs. 30, 34.)

defend against this action after having been properly served. (Docs. 43, 93; see also Docs. 13, 42, 79, 92.)

On July 1, 2015 the FDIC-R filed its original motion for summary judgment. (Doc. 89.) Just as Defendants began filing their responses to that motion, Plaintiff Cadlerock III, LLC acquired the FDIC-R's interest in the notes and the relevant guaranties and subsequently replaced the FDIC-R in this suit. (Docs. 105, 108.) On November 11, 2015, Plaintiff submitted the unsworn declaration of its account officer, Nick Davies, who attested that the rights to the notes and the relevant guaranties were transferred from the FDIC-R to The Cadle Company II, Inc. ("Cadle") and then from Cadle to Plaintiff on August 27, 2015. (Davies 11/11/2015 Decl., Doc. 121-2, ¶¶ 1-7 & Exs. 1-4; see also Davies 05/18/2016 Decl., Doc. 128-5, ¶¶ 2-3; Wheaton Aff., Exs. 1-7.) On March 28, 2016, the Court denied Plaintiff's original motion for summary judgment.[9] (Doc. 124.) On May 18, 2016, Plaintiff filed a motion seeking leave to file its present renewed motion for summary judgment,[10] which the Court subsequently granted. (Docs. 128, 136.)

---

[9] Specifically, the Court found that Plaintiff had failed to demonstrate that it was the "holder" of the relevant instruments as it had not specified in its supporting affidavits of record whether it was in possession of the originals of these instruments and thus had failed to demonstrate its *prima facie* right to enforce the instruments under Georgia law. (Doc. 124, at 7-10.)

[10] In the exhibits to its renewed motion for summary judgment, Plaintiff's counsel attests that she is presently in possession of the originals of the notes and guaranties. (Wheaton Aff. ¶¶ 2-4 & Exs. 1-7.)

## II.  SUMMARY JUDGMENT STANDARD AND APPLICABLE LAW

### A.  Summary Judgment Standard

Plaintiff's motion for summary judgment will be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  In this context, facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In evaluating the contentions of the parties, the Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor," United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

Initially, the moving party bears the burden and must show the Court, by reference to materials on file, the basis for the motion.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial.  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  When the movant has the burden of proof at trial, "that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence . . . that would entitle it to a directed

6

verdict if not controverted at trial." Id. (internal quotation marks and citation omitted). Put another way, the moving party must show that no reasonable jury could find for the non-moving party on any of the essential elements of the case. Id.

If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment by coming forward "with significant, probative evidence demonstrating the existence of a triable issue of fact." Fitzpatrick, 2 F.3d at 1116 (internal quotation marks and citation omitted). After the introduction of the non-movant's evidence, summary judgment will be granted for the moving party only if "the combined body of evidence is still such that the movant would be entitled to a directed verdict at trial – that is, such that no reasonable jury could find for the non-movant." Id. Importantly, however, the non-movant cannot carry its burden by relying on the pleadings or by making conclusory statements. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Instead, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

## B. Applicable Law

As noted in the Court's Order on Plaintiff's original motion for summary judgment, the choice of law rules and the substantive law of Georgia apply in this case. (See Doc. 124, at 5-7.) The choice of law rules of the forum state (here,

Georgia) apply when deciding state law claims. Benchmark Med. Holdings, Inc. v. Rehab Solutions, LLC, 307 F. Supp. 2d 1249, 1258-59 (N.D. Ala. 2004) (citing Boardman Petroleum, Inc. v. Federated Mut. Ins. Co., 135 F.3d 750, 752 (11th Cir. 1998)). Because the notes each specifically state that "[t]he law of the state of Georgia will govern this note," (Wheaton Aff., Exs. 1-2), Georgia law governs those instruments. See Neibert v. Computer Scis. Corp., 621 F. App'x 585, 589 (11th Cir. 2015) ("Absent a contrary public policy, [Georgia courts] will normally enforce a contractual choice of law clause." (quoting Carr v. Kupfer, 250 Ga. 106, 107 (Ga. 1982))). Because the guaranties indicate that the applicable city is Savannah, Georgia and that the lending institution is FNB,[11] (Doc. 128-7, Exs. 3-7), Georgia substantive law appears to govern those instruments. Convergys v. Keener, 582 S.E.2d 84, 86-87 n.1 (Ga. 2003) (holding that Georgia continues to follow the traditional rule of *lexi loci contractus*, whereby contracts are governed "by the law of the place where they were made, except where it appears from the contract itself that it is to be performed in a State other than that in which it was made, in which case the laws of that sister State will be applied." (internal quotation marks, citations, and formatting omitted)); but see Neibert, 621 F. App'x at 589. Because Plaintiff has not renewed its prior

_____

[11] The Court also notes that, in its complaint, Plaintiff indicates that "the events or omissions giving rise to this action occurred in the Southern District of Georgia." (Doc. 1.)

arguments that the laws of another state should be applied to the guaranties,[12] the Court will apply the background rule of *lexi loci contractus* and, consequently, Georgia substantive law for those instruments as well.

## III. DISCUSSION

"In a suit to enforce a promissory note, a plaintiff establishes a prima facie case by producing the note and showing that it was executed." L.D.F. Family Farm, Inc. v. Charterbank, 756 S.E.2d 593, 596 (Ga. Ct. App. 2014). "Once that prima facie case has been made, the plaintiff is entitled to judgment as a matter of law unless the defendant can establish a defense." Id. (internal quotation marks and citation omitted). "Similarly, in a suit on a personal guaranty, when the signature is admitted or established, production of the instrument

---

[12] In its original motion for summary judgment, the FDIC-R argued that Florida law should be the substantive law applied to the guaranties because: (1) each guaranty provides that it "shall be governed by the laws of the State in which it is executed;" and (2) "[t]he consensus of the evidence is that the Guaranties were executed in the State of Florida in January 2008" per the deposition testimony of Mr. Kistler and Defendant Werk. (Doc. 89-37, at 6 n.1; Wheaton Aff., Exs. 3-7; see also Kistler Dep. at 5:12-7:24; Werk Dep. at 14:19-16:21, 27:9-30:2.) As noted by the Court in its Order denying Plaintiff's original motion for summary judgment, the Court finds the evidence provided by Plaintiff insufficient to demonstrate that the relevant guaranties were executed in Florida. (See Doc. 124, at 6-7.) Moreover, given that the relevant Defendants deny having executed the guaranties, the Court finds further briefing and/or discovery on this issue would be futile, particularly in light of Plaintiff's statement that it "can prevail as a matter of law regardless of whether Florida or Georgia law is applied." (Doc. 111, at 3.)

entitles the holder to recover on it unless the defendant establishes a defense."[13] Id.

## A. Defendants Cobalt And Werk

On July 1, 2015, in support of its original motion for summary judgment, the FDIC-R submitted the unsworn declaration of Christopher Roberts, "Vice-President of KeyBank National Association, d/b/a KeyBank Real Estate Capital, as Servicer on behalf of the [FDIC-R], as Receiver for First National Bank." (Roberts Decl. ¶ 1.) Therein, Mr. Roberts stated that he had attached: (1) "[a] true and correct copy of the Renewed Note;" and (2) "[t]rue and correct copies of [Defendants'] Guaranties." (Id. ¶¶ 3, 5.) Additionally, Mr. Roberts attested that he had "access to and [was] familiar with the business records of [FNB] with regard to the Defendants." (Id. ¶ 1.) On November 11, 2015, Plaintiff submitted the unsworn declaration of Mr. Davies, wherein he attests that the rights to the renewed note and Defendants' guaranties were transferred from the FDIC-R to Cadle on August 27, 2015, and then from Cadle to Plaintiff Cadlerock that same day. (Davies 11/11/2015 Decl. ¶¶ 2-7.) The Court subsequently denied Plaintiff's original motion for summary judgment, finding that Plaintiff had failed to demonstrate that it was the "holder" of the renewed note and Defendants'

---

[13] As used herein, a "holder" includes: "(i) the holder of the instrument; (ii) a nonholder in possession of the instrument who has the rights of a holder; or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to [O.C.G.A. § 11-3-309] or [O.C.G.A. § 11-3-418(d)]." See O.C.G.A. § 11-3-301.

guaranties because it had not specified whether it was in possession of the original of the renewed note. See Jenkins v. Wachovia Bank, Nat'l Ass'n, 711 S.E.2d 80, 82-83 (Ga. Ct. App. 2011) (providing that one cannot be a holder of a negotiable instrument unless he has "possession of the instrument").

On May 18, 2016, in support of its renewed motion for summary judgment, Plaintiff submitted another unsworn declaration of Mr. Davies, wherein he attests that Plaintiff received the originals of the notes from the FDIC-R on April 20, 2016 and had subsequently sent these instruments to its counsel of record.[14] (Davies 05/18/2016 Decl. ¶¶ 4-5.) Plaintiff also submitted the affidavit of Ms. Linda S. Saville, "senior Franchise and Asset Marketing Specialist" at the FDIC-R, who attests that the FDIC-R sold the notes to Cadle on August 27, 2015, as evidenced by the allonges, and that the originals of the notes were sent to Cadle's successor, Plaintiff, on or about April 19, 2016. (Saville Decl. ¶¶ 1, 5, 6.) Plaintiff also submitted the affidavit of its counsel, Ms. Laura Wheaton, who attests that she maintains the originals of the notes and the guaranties at her office in Statesboro, Georgia and has made them available for inspection by Defendants. (Wheaton Decl. ¶¶ 2-4 & Exs. 1-7.)

---

[14] Mr. Davies also attached to his May 18, 2016 declaration copies of the original note and renewed notes, as well as allonges transferring the right to payment under these instruments from the FDIC-R to Cadle and from Cadle to Plaintiff. (Davies 05/18/2016 Decl., Exs. A & B.)

Here, Plaintiff has met its burden of establishing its right to enforce the notes and Werk's guaranty as well as Defendants Cobalt and Werk's respective indebtedness thereunder. Given Plaintiff's recent filings, it has fully demonstrated its possession of the original instruments and therefore its entitlement to enforce them against Defendants Cobalt and Werk. See O.C.G.A. § 11-3-301. Plaintiff has also shown the proper execution of these instruments by way of Defendant Werk's own deposition testimony affirming that he did in fact execute the notes on behalf of Defendant Cobalt as well as his personal guaranty of these notes. (Werk Dep., Doc. 89-11, at 27:9-32:3.) Plaintiff further demonstrated that Defendants Cobalt and Werk have failed to make payments in accordance with the terms of the notes and Werk's guaranty and, consequently, their respective defaults thereon. (Davies 9/30/2016 Decl., Doc. 143-1, ¶¶ 2-4 & Ex. 1.) Plaintiff also provided sufficient notice to Defendants Cobalt and Werk of its intent to enforce the attorney's fees provision of the notes and Werk guaranty.[15] (See Compl. ¶¶ 16-

---

[15] Pursuant to the terms of the notes, in addition to principal, Plaintiff is also entitled to interest, late fees, loan-related fees, as well as attorney's fees in the amount of "15 percent of the principal and interest then owed." (See Wheaton Aff., Exs. 1, 2, 7.) Georgia law requires that attorney's fees provisions be enforced where the conditions are "unquestionably satisfied." TermNet Merch. Servs., Inc. v. Phillips, 588 S.E.2d 745, 747 (Ga. 2003); see also O.C.G.A. § 13-1-11. An attorney's fee provision must be enforced under O.C.G.A. § 13-1-11 where: "(1) the note's terms include an obligation to pay attorney fees; (2) the debt owed under the note has matured; (3) notice was given to the debtor informing him that if he pays the debt within ten days of the notice's receipt, he may avoid attorney fees; (4) the ten day period has expired without payment of the principal and interest in full; and (5) the debt is collected by or through an attorney." TermNet, 588 S.E.2d at 747. All of these provisions are met here. (See

17.) Moreover, Defendants Cobalt and Werk have presented no evidence to rebut the aforementioned showings and have not otherwise raised a defense against the enforcement of the notes and/or Werk's guaranty. Accordingly, there are no disputed material issues of genuine fact regarding Defendants Cobalt and Werk's liability under the terms of the notes and Werk's guaranty, respectively, and summary judgment is due thereon. See L.D.F. Family Farm, Inc., 756 S.E.2d at 596; Reece v. Chestatee State Bank, 579 S.E.2d 11, 14 (Ga. Ct. App. 2003) ("Once the record evidence . . . shows a promissory note has been duly executed and is in default, a *prima facie* right to judgment is established and the burden shifts to the debtor to establish an affirmative defense. Because the [debtors] failed to establish a valid defense, the trial court properly granted summary judgment to the [creditor] on the notes." (citing Miller v. Calhoun/Johnson Co., 497 S.E.2d 397 (Ga. Ct. App. 1998))).

## B. Defendants Alvarez, Beeler, Cook, & Tuttle

Because Defendants Alvarez, Beeler, Cook, and Tuttle deny signing their respective guaranties, however, a jury must decide whether they did in fact execute them. In Georgia, "[a] person is not liable on an instrument unless the person signed the instrument." O.C.G.A. § 11-3-401. While the burden of

---

Compl. ¶¶ 16-17.) See also Long v. Hogan, 656 S.E.2d 868, 869 (Ga. Ct. App. 2008) (holding that attorney's fees notice in complaint was sufficient to satisfy requirements of O.C.G.A. § 13-1-11) (citing Upshaw v. S. Wholesale Flooring Co., 398 S.E.2d 749, 752 (Ga. Ct. App. 1990)).

establishing the validity of a signature ultimately rests on the person claiming its validity, "the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature."[16] O.C.G.A § 11-3-308(a). Overcoming the presumption of authenticity is not easy, as it requires the challenging party to produce "other evidence separate from the sworn denial of execution of the signature in defense of the forgery" and demonstrate that "there exist irregularities on the face of the negotiable instrument that would place a reasonable person on notice under a reasonable commercial standard." Lee v. SunTrust Bank, 722 S.E.2d 884, 885 (Ga. Ct. App. 2012) (citing Southtrust Bank of Georgia v. Parker, 486 S.E.2d 402, 405 (Ga. Ct. App. 1997)). At summary judgment, however, only a sworn denial of execution by the obligor is required to create a genuine issue of material fact for trial. See id. at 885-887 (denying summary judgment where obligor submitted affidavit denying execution of instrument).

Here, viewing the evidence in the light most favorable to Defendants and drawing all justifiable inferences in their favor, each of the aforementioned Defendants disputes the

---

[16] "If the validity of the signature[] is admitted or proved, a plaintiff producing the instrument is entitled to enforce the instrument against the defendant, unless the defendant establishes a defense." Lee v. SunTrust Bank, 722 S.E.2d 884, 885 (Ga. Ct. App. 2012) (citing O.C.G.A. § 11-3-308(b); Newton v. Sibley, 615 S.E.2d 185 (Ga. Ct. App. 2005)).

validity of his signature on his respective guaranty, albeit to varying degrees.[17]   Most assertively, Defendant Tuttle has declared that he "did not sign the guaranty asserted by Plaintiff." (Tuttle Decl., Doc. 117, at 26-30, ¶¶ 6, 12.) Less assertively, Defendant Alvarez has declared that he does not recall "seeing" or "signing" the guaranty and that he "would not have knowingly signed an unlimited guaranty." (Alvarez Decl., Doc. 118-1, ¶ 12.)   Finally, with the least amount of conviction, Defendants Beeler and Cook each declare as follows: "I do not admit that I signed any such document [*i.e.*, the personal guaranty].   I have never been shown the supposed original of the document which supposedly bears my signature."[18]

---

[17] Here, while Defendants rely on unsworn – as opposed to sworn – declarations denying their execution of the guaranties, these unsworn declarations may be considered pursuant to the statutory exception found in 28 U.S.C. § 1746. See id. (permitting unsworn declarations to substitute for sworn declarations where the declarant states therein, "in *substantially* the following form: . . . "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct." (emphasis added)); see also Ballou v. Henri Studios, Inc., 656 F.2d 1147, 1153 (5th Cir. 1981) (holding that federal law controls all procedural matters, including evidential issues, in federal courts) (citing Johnson v. William C. Ellis & Sons Iron Works, Inc., 609 F.2d 820 (5th Cir. 1980); Southern Pacific Transportation Co. v. Smith Material Corp., 616 F.2d 111 (5th Cir. 1980)); see also Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (Eleventh Circuit adopts as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981). While it is true that Defendants' respective unsworn statements are not models to be followed by others utilizing the exception provided by Section 1746, the Court finds that Defendants' unsworn declarations are sufficient to fall under the aforementioned exception as each is signed by the respective declarant and includes statements that they are made "under penalty of perjury" and "upon [the declarant's] personal knowledge." See, e.g., Lelieve v. Oroso, 846 F. Supp. 2d 1294, 1299 n.2 (S.D. Fla. 2012) ("As the Former Complaint was signed and dated by Lelieve under penalty of perjury, the Court accepts Lelieve's Statement of Disputed Facts as supported insofar as Lelieve cites to statements made on personal knowledge in the Former Complaint." (citations omitted)).

[18] Defendants Alvarez, Beeler, Cook, and Tuttle also note that seven high-ranking individuals at FNB – including the loan officer involved with the origination of the instant notes and guaranties, Mr. Isaac Jefferson Mulling

15

(Beeler Decl., Doc. 123, at 2-3, ¶ 5; Cook Decl., Doc. 123, at 4-5, ¶ 5.)   Moreover, each of these Defendants states that, while they "have paid money on bank loans relating to the failed effort to start a new bank in Coral Gables," they have done so without a full "knowledge and understanding of the alleged" notes and/or guaranties. (Tuttle Decl. ¶ 9; Alvarez Decl. ¶ 14; Beeler Decl. ¶ 6; Cook Decl. ¶ 6.)

In response to these denials, Plaintiff asserts that summary judgment is nevertheless proper because: (1) these Defendants are estopped from disclaiming their signatures within their respective guaranties because of their failure to contest the guaranties at the time of the note's renewal; and (2) by remitting funds to obtain the renewed note, these Defendants ratified their respective guaranties.

### 1. Estoppel

In support of its estoppel argument, Plaintiff cites to Citizens & S. Nat'l Bank v. Yeager Enters., 279 S.E.2d 674 (Ga. 1981).  In Yeager, the guarantors raised the defense of fraud to invalidate their guaranties only after renewing their promissory note.  Id. at 675.  Consequently, the Supreme Court of Georgia held that the guarantors' fraud defense was waived by the rule of estoppel by silence.  Id. at 675-76.  Central to the court's holding, however, was "the fact that the individuals who signed

---

- have been convicted of bank fraud and/or false entries in bank records in connection with their activities while employed by FNB.  See USA v. McMath, et al., Case No. 4:13-CR-03 (S.D. Ga. 2014).

the original and renewal notes as officers of the corporation
are the same individuals who signed the guaranty agreements" and
that the guarantors "concede[d] that the actions upon which the
fraud defense is based were known [to them] prior to the
execution of the renewal note." Id. In light of this fact, the
Georgia Supreme Court stated that "any reasonable person would
consider the renewal of the underlying obligation, coupled with
silence regarding the guaranties, an acknowledgement of the
righteousness of [the bank's] claim" as to both the notes and
the guaranties. Id.

Implicit to the Yeager court's holding was its finding that
the guarantors at issue knew, or should have known, of the fraud
on which they sought to invalidate their guaranties at the time
they renewed their promissory note. Id. Thus, in order to
estop Defendants from raising their present defense, this Court
must be similarly convinced that Defendants knew - or at least
should have known - of the forged guaranties at the time of the
note's renewal. To this end, Plaintiff highlights the fact that
the Defendants each paid $8,500.00 in order for the note to be
renewed. Thus, Plaintiff is essentially arguing that these
Defendants only made such payments because they knew of their
absolute, unconditional personal guaranties of the note (*i.e.*,
that they knew or should have known of the factual basis upon
which their present fraud defense relies at the time they paid

to renew the note). While this is a possible rationale, to enter judgment in Plaintiff's favor thereon would require the Court to weigh the evidence and/or draw inferences in Plaintiff's favor, which the Court cannot do at this juncture.[19] See Parcels of Real Prop., 941 F.2d at 1437. As a result, Plaintiff's rationale – though it may be the most likely – is insufficient for the Court to conclude that Defendants knew of the forged guaranties and therefore should be estopped, as a matter of law, from raising their fraud defense.

## 2. Ratification

"While an unauthorized signature cannot bind a party when forged, if the unauthorized signature is ratified, then the signature becomes binding through ratification," Parker, 486 S.E.2d at 405, whether "express or implied from the acts or silence of the principal," O.C.G.A. § 10-6-52. See also O.C.G.A. § 11-3-403 ("An unauthorized signature may be ratified for all purposes of this article."). Sometimes, even "[s]light circumstances and small matters . . . will suffice to raise the presumption of ratification." Pioneer Concrete Pumping Serv., Inc. v. T & B Scottdale Contractors, Inc., 462 S.E.2d 627, 629 (Ga. Ct. App. 1995) (internal quotation marks and citation

---

[19] While the notes state on their respective faces that they are secured by the personal guarantees of Defendants Alvarez, Beeler, Cook, and Tuttle, inter alia, (Wheaton Aff., Exs. 1 & 2), Plaintiff has put forth no evidence that these Defendants were actually aware of the notes' terms. Indeed, the only individuals who signed the notes were Defendant Werk and non-party Jeff Mulling. (Id.)

omitted). Indeed, "[r]atifying conduct can include silence . . . or payment pursuant to an allegedly unauthorized agreement." Id. (citations omitted). The ultimate test in the instant circumstances, however, is whether the putative guarantors, "with full knowledge of all the material facts, accept[ed] and retain[ed] the benefits" of their personal guaranties. Parker, 486 S.E.2d at 406; see also Jernigan Auto Parts, Inc. v. Commercial State Bank, 367 S.E.2d 250, 253 (1988) ("[W]here a debtor voluntarily pays a part of an amount claimed to be due by his creditor on a contract which the debtor seeks to attack on the ground of . . . fraud in an action against him by the creditor for an overdue installment thereunder he is conclusively deemed to have waived . . . fraud *if at the time of the partial payment he has knowledge of all the facts upon which he now bases his claim of fraud.*" (emphasis added) (citations omitted)).

While it cannot reasonably be disputed that Defendants, as members of Cobalt, enjoyed the benefits of the renewed note, their knowledge of the material facts surrounding the guaranties at the time of the note's renewal is less certain. Plaintiff argues that these Defendants had sufficient knowledge because "all four defendants paid their portion of the interest upon being told that the Note they had guaranteed was up for renewal." (Doc. 143, at 12.) Yet the evidence provided by

19

Plaintiff – viewed in the light most favorable to these Defendants – does not necessarily demand the conclusion that these Defendants had actual or constructive knowledge of their alleged personal guaranties at the time they made their respective capital call payments of $8,500.00. The note was renewed on January 20, 2009. (Roberts Decl. ¶ 5; Wheaton Aff., Ex. 2.) The only evidence cited in support of these Defendants' supposed knowledge of their personal guaranties, however, is an email dated February 10, 2009, wherein an attorney representing Mr. Harper, Mr. W. Reeder Glass, wrote to these Defendants[20] (and others) that "this loan [from FNB] is guaranteed by all seven of you, jointly and severally, and has now been extended to July 20."[21] (Doc. 89-12, at 2.) While Mr. Glass did not deposit Defendants Alvarez and Tuttle's capital call payments until February 24, 2009, (Doc. 89-27), Plaintiff admits that these "checks may have been sent as early as February 9 [2009]."[22] (Doc. 89-37, at 18; see also Docs. 89-21, 89-25.) Moreover, while Defendants Beeler and Cook's respective payments were made

---

[20] Notably, Defendant Alvarez was not a direct recipient on this email. (See Doc. 89-12.)

[21] Plaintiff has also submitted an additional email dated February 3, 2009 from Mr. Glass to several of these Defendants wherein he states that "I expect confirmation from [FNB] today that the loan has been extended until July 20, 2009. We will now begin to renegotiate the First National, First South and IBB loans *guaranteed by some or all of you* in order to create an integrated debt structure." (Doc. 89-19 (emphasis added).) Given the inconclusive nature of this statement, however, the Court finds it insufficient, without more, to have put these Defendants on notice of their own respective alleged guaranties of the notes.

[22] Notably, while Plaintiff has submitted copies of Defendants Alvarez and Tuttle's respective checks representing their capital call payments, it has blocked the date and signature lines of these checks with a copy of the deposit slip related thereto. (See Doc. 89-27.)

after February 10, 2009 (*i.e.*, by checks dated February 16, 2009), (docs. 89-22, 89-24), a reasonable jury could still find that all four of these Defendants were unaware of the actual material terms of their alleged guaranties and thus did not have "knowledge of all the facts" upon which they now base their claim of fraud. Therefore, Plaintiff has not sufficiently established, at this juncture, estoppel by silence or ratification, and thus these Defendants are entitled to a trial on the issue of the validity of their supposed signatures on their respective guaranties.

## III. CONCLUSION

Upon due consideration, Plaintiff's renewed motion for summary judgment (doc. 137) is **GRANTED IN PART, DENIED IN PART**. Because no genuine issues of material fact remain as to Defendants Cobalt and Werk's liability, Plaintiff's motion for summary judgment is **GRANTED** as to Defendants Cobalt and Werk.[23] The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff CadleRock and against Defendants Cobalt and Werk, jointly and severally, in the amount of $2,360,107.71.[24] Because genuine issues of material fact remain as to Defendants Alvarez, Beeler,

---

[23] As summary judgment has been entered in favor of Plaintiff against Defendant Werk, Plaintiff's renewed motion for entry of default judgment against Defendant Werk (doc. 139) is **DENIED AS MOOT**.
[24] This includes $1,000,000.00 in principal, $1,052,267.57 in interest, and $307,840.14 in attorney's fees. (See Doc. 143-1, ¶¶ 2-4; see also Doc. 128-7, Exs. 1, 2, 7.)

Cook, and Tuttle's liability, Plaintiff's motion for summary judgment is **DENIED** as to Defendants Alvarez, Beeler, Cook, and Tuttle.

**ORDER ENTERED** at Augusta, Georgia, this 13ᵗʰ day of March, 2017.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA